**MANUFACTURERS HANOVER LEASING CORPORATION, Plaintiff,**

v.

**ACE DRILLING COMPANY, Kenneth G. Adams, Stephen S. Adams, Mark N. Shoup and Gary C. Adams, individually and as Trustee for the Gary Clark Adams Trust, the Kimberly Clark Adams Trust, and the Jamey Lea Adams Trust, Defendants.**

**No. 86 Civ. 9347(MP).**

United States District Court,
S.D. New York.

Sept. 20, 1989.

Simpson Thacher & Bartlett, New York City by Joseph Tringali, for plaintiff.

Jack David, New York City, for defendant Gary Adams.

**MEMORANDUM**

MILTON POLLACK, Senior District Judge.

Defendant Gary Adams moves to dismiss this action based on the lack of personal jurisdiction, or, in the alternative, defendant seeks transfer of this action to the United States District Court for the Northern District of Oklahoma. For the reasons

outlined below, both of Defendant's motions are denied.

### Facts

In 1978, Ace Drilling Company ("Ace"), an Oklahoma General Partnership, and Manufacturers Hanover Leasing Corporation ("MHLC"), a New York Corporation licensed to do business in Texas, entered into negotiations for the lease of a drilling rig to Ace. These discussions were carried out between Ace's offices in Oklahoma and MHLC's branch office in Houston, Texas. The documents were signed in Texas and subsequent negotiations were carried out in Texas and in Oklahoma. The agreements stated that New York law governed and that payments would be made to MHLC in New York or anywhere else MHLC requested.

As an express condition precedent to the lease, personal guarantees were signed by several of Ace's partners, including Gary Adams, to guarantee the lease. These guarantees were signed in Oklahoma.

### Discussion

#### 1. Jurisdiction

■ Personal jurisdiction in a diversity action is determined by the law of the forum. *United States v. First National City Bank*, 379 U.S. 378, 381–82, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

Section 302(a)(1) of the New York Civil Practice Law and Rules (McKinney's 1972 & Supp.1989) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomicilliary ... who in person or through an agent:
>   1. transacts any business within the state or contracts to supply goods or services in the state ...

The courts have held that making a guarantee of payment to New York is "supply[ing] goods or services" in the state. *Gaines Service Leasing Corp. v. Ashkenazy*, 635 F.Supp. 805 (E.D.N.Y.1986); *Chem-co International Leasing, Inc. v. Meridian Engineering, Inc.*, 590 F.Supp. 539 (S.D.N.Y.1984); *Fashion Tanning Co. v. Shutzer Indus., Inc.*, 108 A.D.2d 485, 489 N.Y.S.2d 791 (3d Dept.1985). Defendant argues that his guarantee was not directed toward New York. However, the first paragraph of the "Guarantee" binds the guarantor to "full and punctual payment and performance" of the underlying leases to MHLC. The underlying leases specifically provided that payments were to be made to MHLC at 30 Rockefeller Plaza in New York, or any other place MHLC would designate. See also *Gaines Service, supra*, 635 F.Supp. at 807 (location of payments due under lease are "by extension" same location as where payments are due under guarantee).

Defendant alleges that because 44 of the 45 payments requested by MHLC were directed to be paid to MHLC in Houston, the guarantors could not have anticipated that they were guaranteeing a New York obligation. But the payment notices were directed to Ace, as lessee; not to Gary Adams as guarantor. The first demand made upon the guarantors directed that payment be made to MHLC in New York.

Even if the guarantors were aware of the payment demands in Houston, this would not change the nature of their guarantee. The "Guarantee" specifically provided that:

> [e]ach Guarantor consents that the Obligations ... may ... be renewed, extended, modified, accelerated, compromised, settled, or released by MHLC ... all without notice to, or further assent by ... the Guarantors, and without in any way affecting or releasing the liability of the Guarantors hereunder....

So each Guarantor was bound by the expectation that payment would be requested at 30 Rockefeller Plaza.

Gary Adams has specifically agreed to perform his primary obligation, payment of Ace's lease obligations, in New York. *Chemco, supra*, 590 F.Supp. at 542.

In addition, both Gary Adams and the transaction had other connections with New York, and, "[i]n making Section

302(a)(1) determinations, the court must examine the 'totality of defendant's activities within the forum.'" *Chemco,* supra, 590 F.Supp. at 540 (S.D.N.Y.1984) (quoting *Trafalgar Capital Corp. v. Oil Producers Equip. Corp.,* 555 F.Supp. 305, 308 (S.D.N.Y.1983)).

■ One of these connections was that both the lease and the guarantee provided that they would be governed by New York law. While a choice of law provision is not dispositive in a question of personal jurisdiction, it is one factor to be taken into account. *Chemco,* supra, 590 F.Supp. at 543; *Income Fund of Boston, Inc. v. F.H. Vahlsing, Inc.,* 49 A.D.2d 724, 372 N.Y. S.2d 658 (1st Dept.1975).

Also, the defendant executed a security agreement contemporaneously with the execution of the guarantee. The security agreement likewise provided that it was governed by New York law, and additionally provided that any notice would be effective only if it was sent to MHLC in New York.

These factors, added together, make it clear that Gary Adams could reasonably anticipate being haled into court in New York. *Chemco,* supra, 590 F.Supp. at 544 (citing *Worldwide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

### 2. *Venue*

■ Defendant requests that this action be transferred to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a). He also would stipulate that the case be transferred to Houston. The purpose of this section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964). "The weighing of the relative inconveniences and the determination of which forum the balance of convenience favors is a matter committed to the discretion of the district court." *Wyndham Assoc. v. Bintliff,* 398

F.2d 614, 621 (2d Cir.1968); accord *Filmline (Cross Country) Prod., Inc. v. United Artists Corp.,* 865 F.2d 513 (2d Cir.1989); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir.1978).

The courts are reluctant to disturb plaintiffs' choice of forum absent a showing that the balance is very strongly in the defendant's favor. See, e.g. *Olympic Corporation v. Societe Generale,* 462 F.2d 376 (2d Cir.1972); *A Olinick & Sons v. Dempster Bros., Inc.,* 365 F.2d 439 (2d Cir.1966); *Eastern Refractories Co. v. Forty Eight Insulations, Inc.,* 668 F.Supp. 183 (S.D.N.Y.1987). Defendant Gary Adams says that none of the important witnesses and documents are located in New York, while many are located in Oklahoma. But the facts show that MHLC closed its Houston operation in 1985. Important MHLC business records and witnesses are now located in New York. Gary Adams has also failed, for the entire three year history of this action, to demand depositions of New York witnesses or to request New York documents.

Another factor militating against a change of venue to Oklahoma or to Houston is that New York law governs the underlying obligations. "There is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

### *Conclusion*

For the reasons outlined above, Gary Adams' motions to dismiss and to transfer are denied.

So Ordered.