OPINION OF THE COURT
Edward J. Greenfield, J.
This case raises a question of significance to the New York financial and business community, and those elsewhere in the country or abroad who deal with them. The problem posed is whether the giving of a financial guarantee of a loan payable in New York by a non-New York domiciliary constitutes the supplying of goods and services within the State, creating in personam jurisdiction here under our long-arm statute (CPLR 302).
The facts are uncomplicated. When a corporation named Jazzles, Inc. of Columbus, Ohio (what it does or what it makes *151 is unspecified), sought to obtain financing in New York, defendant Gary Neville, a real estate developer in Santa Monica, California, who asserts he is neither an officer nor a shareholder of dazzles, agreed to help them out by signing an individual guarantee of payment, which was mailed to him for execution in California. The lender, Waldorf Associates, Inc., is a New York corporation, headquartered in New York City. Admittedly, defendant was never present in New York for negotiations concerning either the underlying loan or the guarantee.
After paying the notes due for the first few months, dazzles defaulted, leaving an unpaid balance of $366,115.40. It then moved from Ohio to Florida. Plaintiff lender then sought to recover on the guarantee by an action in this court, serving the summons and complaint on defendant in California, purportedly in accordance with CPLR 313, which permits personal service outside the State on a person subject to State court jurisdiction under the long-arm provisions of CPLR 302 (a).
Defendant has moved for an order dismissing the complaint on the grounds that the court lacks personal jurisdiction over the defendant. The plaintiff has cross-moved for summary judgment.
Plaintiff asserts two strings to its bow to substantiate its claim of jurisdiction — (a) defendant agreed to New York jurisdiction by contract, and (b) defendant is subject to New York jurisdiction by operation of law.
The alleged contractual basis for the assertion that there has been consent to in personam jurisdiction in New York is predicated on the following language in the guarantee: "This guaranty, is and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed applied and enforced in accordance with the laws of said State, and no defense given or allowed by the laws of any other State or Country shall be interposed in any action hereon unless such defense is also given or allowed by the laws of the State of New York.”
The quoted paragraph clearly is a choice of law provision, specifying the governing law which is to control in the event of litigation. It has nothing to do with choice of forum or consent to submit to jurisdiction. (McShan v Omega Louis Brandt et Frere, 536 F2d 516, 519; Galgay v Bulletin Co., 504 *152 F2d 1062, 1066.) The parties have merely agreed that New York substantive law shall govern with respect to the formation, interpretation, and enforcement of the contract, wherever those questions may be litigated, in Ohio, California, New York, Florida, or elsewhere, nothing more. The subject of the sentence is the contract, and how it shall be dealt with. No consent can be found in that provision that the guarantor will accede to jurisdiction over him by the New York courts no matter where he may be served, nor has he designated an agent to receive process in New York on his behalf. (Cf., National Rental v Szukhent, 375 US 311.)
Presence in New York for purposes of jurisdiction is premised on a defendant either doing business here generally with a fair measure of permanence and continuity (Tauza v Susquehanna Coal Co., 220 NY 259, 267; McGowan v Smith, 52 NY2d 268, 272; Laufer v Ostrow, 55 NY2d 305, 310), or with a lesser degree of contact if liability is claimed to arise from a particular transaction within the State. There must be some articulable nexus between the transaction and the cause of action sued on. (McGowan v Smith, supra, at 272.)
The basis for long-arm jurisdiction pursuant to CPLR 302 (a) is a transaction giving rise to a breach of contract, or the commission of a tort having impact within the State. In 1970, the Court of Appeals held, in Ferrante Equip. Co. v Lasker-Goldman Corp. (26 NY2d 280), that one who executed an indemnity agreement and guarantee out of State covering a construction contract to be performed in New York did not “transact * * * any business within the state” (CPLR 302 [a] [1]) or commit a wrong therein, the nonperformance being the acts or omissions of others. Any change, the Court of Appeals said, would have to come from the Legislature.
In 1979 the Legislature did change the law, by adding to CPLR 302 (a) (1) an amendment conferring personal jurisdiction as to a cause of action arising not only from transacting business within the State, but also where the person “contracts anywhere to supply goods or services in the state”. (L 1979, ch 252, § 1.)
Can the furnishing of a guarantee now be construed as contracting to furnish goods and services in the State? That turns on whether the giving of a financial guarantee is considered providing "services”.
The Law Revision Commission, which sponsored the amendment, attempted to enlarge the jurisdictional basis of long-arm *153 jurisdiction by encompassing purposive activities in the State in business transactions even without personal presence, one of the elements alluded to in Ferrante (supra). (See, mem of Law Rev Commn Relating to Revision of Certain Long Arm Jurisdiction Provisions in CPLR art 3 [1979 NY Legis Doc No. 65 (C)], at 5.) The change was modeled on the statutes of Michigan, Wisconsin, and the Uniform Laws. (Mich Comp Laws Annot § 600.705 [2]; Wis Stat Annot former § 262.05 [5] [a]; Uniform Interstate and International Procedure Act § 1.03 [a] [2], 9B ULA [1966].) The Legislature, in expanding jurisdiction, meant to make those nonresidents amenable to service whose extraterritorial activities had direct and measurable consequences arising from the obligation to supply goods or services within the State. The underlying purpose of the 1979 amendment to the CPLR is to ease the plight of New York residents seeking to obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this State.
Clearly a contract to supply goods within the State, no matter where made, has a direct impact in the State, and a failure to honor it can give rise to damages for tort or breach. Similarly, the supplying of "services” can have comparable impact. Supplying money is not tantamount to supplying goods. The definition of "Goods” in section 2-105 of the Uniform Commercial Code explicitly excludes money (unless traded as a commodity), and things in action.
But is the giving of a financial guarantee, assuring the availability of funds if a principal obligor defaults, a "service”? It is well established that the term "services” has always been used to denote work and labor in its traditional sense. (Corenti v Kulik, 36 Misc 2d 996; Matter of Schmitt, 65 Misc 2d 1021; Grossman v Sendor, 89 Misc 2d 952, mod on other grounds 64 AD2d 561.) Payment of a financial obligation has never been considered a "service”. (Bradigan v Bayliss, 255 App Div 934.) Accordingly, the giving of a promissory note, executed outside of the State and payable in New York, does not fall into the category of a contract to supply goods or services within the State, nor does it constitute doing business within the State. (American Recreation Group v Woznicki, 87 AD2d 600.)
Had the Legislature intended to include strictly financial obligations, it could have easily expanded the language of CPLR 302 (a) (1) to include "or comply with financial obligations” or "to pay moneys due to a resident of the state”. An *154 agreement of indemnity or guarantee cannot be transmuted into a contract to provide goods and services. (Media Corp. v Motif Mfg. Co., 524 F Supp 86, 87.)
A distinction may be made between a guarantee of payment and a guarantee of performance. If performance of the underlying contract, such as a construction contract, has to be carried out by the guarantor within the State, then it may be said that the contract is to perform a service here. (Cf., Culp & Evans v White, 524 F Supp 81.) There is no indication that the underlying loan was to be used anywhere other than in Ohio. The California guarantor was attempting to help an Ohio corporation, and not to obtain benefits for himself in New York, as he would if he contracted to supply goods or services here. Moreover, the guarantee by defendant of dazzles’ obligation of payment does not even indicate that payment under the guarantee is to occur in New York.
Accordingly, this court concludes that New York has no long-arm jurisdiction over a nondomiciliary who was never physically present in New York, and never agreed to provide any goods and services here, other than a promise to a New York corporation that he would make good if an Ohio corporation defaulted on its debt. In light of the foregoing, the court denies the cross motion of plaintiff for summary judgment, and grants defendant’s motion to dismiss the action for want of personal jurisdiction.